**Case No. 23-3286**

**UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

LANLAN LI,

PLAINTIFF-APPELLANT,

v.

FRESENIUS KABI, USA, LLC.

DEFENDANT-APPELLEE.

---

**Appeal From the United States District Court
For The Northern District Of Illinois
Eastern Division**

**BRIEF AND REQUIRED SHORT APPENDIX OF
PLAINTIFF-APPELLANT, LANLAN LI**

CARLA D. AIKENS P.L.C.
Carla D. Aikens (6296269)
Attorneys for Plaintiff-Appellant
615 Griswold Street, Suite 709
Detroit, MI 48226
Tel: (844) 835-2993
Fax: (877) 454-1680
carla@aikenslawfirm.com

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-3286

Short Caption: Lanlan Li v. Fesenius Kabi, USA, LLC

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Lanlan Li

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Carla D. Aikens, P.L.C.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature:  /s/ Carla D. Aikens    Date: March 6, 2024

Attorney's Printed Name:  Carla D. Aikens, P.L.C.

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ✔  **No** ☐

Address:  615 Griswold Street Suite 709, Detroit Michigan 48226

Phone Number: (844) 835-2993    Fax Number:  (877) 454-1680

E-Mail Address: carla@aikenslawfirm.com

rev. 12/19 AK

# TABLE OF CONTENTS

I.    TABLE OF AUTHORITIES ........................................................................ 3

II.   JURISDICTIONAL STATEMENT................................................................ 4

III.  ISSUES PRESENTED............................................................................. 5

IV.   STATEMENT OF THE CASE ..................................................................... 6

V.    SUMMARY OF THE ARGUMENT............................................................. 13

VI.   ARGUMENT ....................................................................................... 14

VII.  CONCLUSION ................................................................................... 28

VIII. CERTIFICATE OF COMPLIANCE ........................................................... 28

CERTIFICATE OF SERVICE ......................................................................... 29

SHORT APPENDIX: TABLE OF CONTENTS ...................................................... i

STATEMENT REGARDING SHORT APPENDIX ................................................. ii

# I.    TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)    14, 15

*Carson v. Lake Cty., Indiana*, 865 F.3d 526 (7th Cir. 2017)    26

*Formella v. Brennan*, 817 F.3d 503 (7th Cir. 2016)    25

*Ortiz v. Werner Enterprises, Inc.*, 834 F.3ed 760 (7th Cir. 2016)    26

*Van Antwerp v. City of Peoria, Ill.*, 627 F. 3d 295 (7th Cir. 2010)    25

**Statutes**

28 U.S.C. § 1291    4

29 C.F.R. § 1630.4    15

29 C.F.R. app. §1630.9    15

29 CFR § 1601.28(a)(1)    12, 20, 26

29 U.S.C. § 621 et seq    4

42 U.S.C. § 12112(a)    15

42 U.S.C. § 2000 et seq    4

**Rules**

Fed. R. Civ. P. 56(c)    14, 15

**Other Authorities**

*Fact Sheet: Disability Discrimination*; Issued January 15, 1997; Published by the
    U.S. Equal Employment Opportunity Commission    16

## II.    JURISDICTIONAL STATEMENT

The Seventh Circuit Courts of Appeals, "… shall have jurisdiction of appeals from all final decisions of the district courts of the United States...." 28 U.S.C. § 1291. The Seventh Circuit Court of Appeals has jurisdiction to entertain this appeal pursuant to 28 U.S.C. § 1291, because all claims brought herein are related to alleged violations of the United States federal statutes, including Title VII, 42 U.S.C. § 2000 et seq., and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101et seq.; age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29U.S.C. § 621 et seq.,and the IHRA; and retaliation in violation of Title VII and the IHRA. Ms. Li further brings claims alleging discrimination on the basis of national origin and failure to accommodate claims as shown by Exhibit A: Plaintiff's Amended Complaint.

The 'Order' of the District Court denying Appellant's motion for reconsideration was filed on May 15, 2024. (Memorandum, Opinion & Order, Doc. No. 88 PageID 853) The judgment in question is a final judgment by the Honorable Mary M. Rowland - District Judge, in the United States District Court Northern District of Illinois.

### III.    ISSUES PRESENTED

1.  **Whether the District Court erred by granting Defendant's motion for summary judgment.**

2.  **Whether the District Court erred by denying Plaintiff's motion for reconsideration.**

## IV.   STATEMENT OF THE CASE

Plaintiff, Lanlan Li, is over 40 years of age and of Chinese descent. (*See* Exhibit A: Plaintiff's Complaint at ¶ 91, 156). Plaintiff, Lanlan Li, brought suit against Defendant. FRESENIUS KABI, USA, LLC ("FK"), for discrimination, and based on her race/national origin, age, and or disability; as well as claims for failure to accommodate and retaliation based on her disability. Ms. Li began working for Defendant in November of 2014 as a Senior Scientist in the Department of Analytical Development, (Exhibit B: Deposition Transcript of Lanlan Li at 148-50; 161-62). Sarviaya Sarvaiya ("Ms. Sarviaya") was a Principal Scientist for Defendant during the time of the allegations in Plaintiff's Complaint. (Exhibit C: Deposition Transcript of Jagdish Lande, Pages 104-105).[1]

In 2016, Ms. Li was asked to perform a cell-based assay involving vasopressin. (*See* Exhibit A at ¶ 13). FK intended that the final report would be submitted to the U.S. Food and Drug Administration for approval on the "Vasopressin project." (Exhibit C at 18-20). The deadline for submission of Ms. Li's report on the Vasopressin Project to the FK Regulatory Affairs was June 24, 2019 (*See* Exhibit A ¶ 27). On May 6, 2019, Ms. Li emailed Mr. Weber asking if she could be promoted to Principal Scientist. To support this request, Ms. Li laid

---

[1] As discussed later in the facts and argument, Ms. Purvaba was accommodated while in the same position as Ms. Li. Ms. Purvaba was promoted after an accommodation had been offered in the previous role. (*See* Exhibit A at 148-50; 162-62).

6

out the following reasons: five years of experience with Defendant with expertise in bioassays and cell-based assays; set up and equipped the Bioassay Lab at Defendant's location; developed high-throughput dextrose bioassay to quantify dextrose (used by stability group for stability testing); resolved problems and developed the Defendant's capability in live cell bioassays thereby saving Defendant a large sum of money; established all in-house guidance and SOPs related to cell, cell culture, FLIPR instrument, and cell-based FLIPR assay; provided a broad array of peptide experience critical to the challenges of future projects in the I&D pipeline; and her salary is at the lower end as an experienced scientist at FK. (Exhibit D: Defendant's Responses to Production at DEF 01145). Mr. Weber responded that completion of the report on the Vasopressin Project "would help greatly." (Exhibit D).

Ms. Li submitted her report on the Vasopressin Project on May 29, 2019. (Exhibit A ¶ 25). As a result of her hard work, on June 8, 2019, Mr. Weber awarded Plaintiff a monetary bonus. (Exhibit E: Defendant's Responses to Production at DEF 1129-1130). However, Mr. Weber did not recommend Plaintiff for a promotion despite email statements to Plaintiff saying Mr. Weber spoke with Mr. Lande regarding said promotion. (*See* Exhibit D). Further, Mr. Weber's testimony only stated that the typical process for promotion recommendation was recommendation by a supervisor. (*See* Exhibit C at 105). Nowhere in the transcript

did Mr. Lande state this was the only way someone could be recommended for promotion. *Id*.

Plaintiff went on vacation from May 30, 2019 to June 23, 2019. (*See* Exhibit A ¶ 28). Defendant claims, without support, that Ms. Li "deviated" from the approved method of testing and that her report did not meet industry standards. (Doc No. 66 Page ID #260 at ¶21).[2] However, Defendant cites to pages 18-20 of Exhibit C: Deposition Transcript of Jagdish Lande, which does not support such a statement. In fact, Mr. Lande stated "modifications" to a Report, are the norm in the field. (Exhibit C at 18-20). These frustrations with a normal occurrence occurred barely a month prior to Plaintiff's first request for an accommodation. (Exhibit C at 20-22). The long hours and effort Ms. Li put towards the Vasopressin Project caused pain and other back issues, which she reported to Defendant. (Exhibit F: Defendant's Response to Production at DEF 03355). On July 24, 2019 Mr. Lande and Mr. Weber met with Plaintiff to discuss her health concerns. (*See id*.). Mr. Lande told Plaintiff not to speak with Mr. Jinsong on these issues and that she "shouldn't walk into Jinsong's office rather than resolving with him." (Exhibit A at 113-114).

---

[2] Any implication Plaintiff did not understand FDA guidelines is simply unfounded as she had submitted to the FDA numerous times in her almost 23 years career. (Exhibit B at 79). Further, any implication that Plaintiff failed in her responsibilities is countered by Mr. Lande's admission. (*See* Exhibit C at 18-20).

8

On August 1, 2019, Plaintiff sent Birgit Patrick, Human Resources Manager, a copy of her work restrictions from a doctor's visit on July 31, 2019. Her work restrictions included no lifting over 5 pounds and to avoid sitting 7-8 hours. (*See* Exhibit G: Defendant's Responses to Production at DEF 03143 and DEF 0056). On August 1, 2019, Ms. Patrick notified Emma Woods, Environmental Health and Safety Manager, and asked her to assist Plaintiff in filing a first report of injury and a workers' compensation claim. (*See* Exhibit H Defendant's Responses to Production at DEF 03142-DEF 03143) A meeting took place on August 2, 2019, Ms. Patrick, Mr. Weber, and Ms. Li determine if any work accommodations could be made to comply with her doctor's restrictions. (*Id*.) A doctor's note from NorthShore University Health System, dated August 12, 2019, added further support for Ms. Li's need of an accommodation as it related to lab work. (Exhibit I: Defendant's Responses to Production at DEF 0190). Mr. Lande stated in his deposition that the above-referenced note only mentioned "bench work" and not lab work, as stated above. (Exhibit C at 107).[3]

In early to mid-August, Ms. Patrick and Mr. Weber allegedly met with Plaintiff and agreed that they could accommodate her restriction of no lab work, but that there may be times when there would not be 8 hours of work available.

---

[3] No documentation was provided stating that lab work and bench work mean the same thing.

Ms. Patrick explained that if there was not sufficient work to meet this restriction, she would receive compensation from UNUM, Defendant's short term disability provider until such time as her workers' compensation claim was determined. (*See* Exhibit J: Defendant's Responses to Production at DEF 03170, 03407-03414). Ms. Patrick contacted Kristina Fuller, Benefits Analyst, on August 13, 2019, to assist Plaintiff in filing for leave under the Family and Medical Leave Act and Short-Term Disability benefits. (*See* Exhibit K, Defendant's Responses to Production, DEF 03168.). Ms. Li asked for the paperwork to begin the process from Ms. Fuller, but FK has not shown whether Ms. Fuller actually sent the documentation to Ms. Li. (Exhibit L: Defendant's Responses to Production at DEF 03176).[4]

Between August 12, 2019 and March 23, 2020, Plaintiff remained unable to perform lab bench work and Ms. Li never received communications from Mr. Weber asking for ways to accommodate Plaintiff's injury, nor did Plaintiff receive inquiries into the severity of her pain. (Exhibit B at 184). Defendant picked and chose to whom to offer additional accommodations based upon improper factors

---

[4] UNUM received Ms. Li's medical documentation and on December 19, 2019 UNUM notified Plaintiff that she was approved for Short-Term Disability benefits beginning September 26, 2019. (*See* Exhibit M: Defendant's Responses to Production at DEF 0217-0219)

such as race and age. (Exhibit A: Deposition of Lanlan Li at 153, 161-62, 173).[5] Not a single person in Defendant's employ engaged with Ms. Li in an interactive process to find out what accommodations could be made. (Exhibit A at 184).

On March 11, 2020, UNUM sent Plaintiff and Defendant a letter about transitioning Ms. Li to Long Term Disability Benefits. (Exhibit O: Defendant's Responses to Production, DEF 03357-03360 and DEF 03366.). On March 23, 2020, Defendant informed Plaintiff that she had exhausted her Short-Term Disability Leave and that should she be unable to return to work by April 23, 2020, she would be terminated from payroll. (Exhibit P: Defendant's Responses to Production at DEF 03354). Defendant in its motion tried to attach a March 2020 merit increase as evidence to counter Plaintiff's claims. (Doc No. 66 Page ID #263 at ¶40). As a clarifying point, Plaintiff was not approved for Short Term Disability benefits until December 19, 2019. The discretionary bonus covered work done between January 1, 2019 and December 31, 2019. (*See* Exhibit M). Any implication by Defendant that this bonus was given in spite of Plaintiff's status is baseless, as Plaintiff worked in her normal capacity without restrictions the majority of 2019. By May 26, 2020, Plaintiff was terminated.

---

[5] Defendant did not even differentiate between individuals from the entire continent of Asia. (*See* Exhibit N: Deposition Transcript of Deborah Browne at 130-133).

On or about November 20, 2019, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission alleging discrimination based on her disability and retaliation. Plaintiff filed an IDHR charge including national origin discrimination and age discrimination, among other bases, which was sent to the EEOC to review.  (*See* Exhibit Q: IDHR Charge; *see* Exhibit R: Letter from IDHR; *see* Exhibit S: Email from EEOC Requesting Issuance of Right to Sue Letter). The subject line of the email from the EEOC indicates that it incorporates the IDHR charge which corresponds to the national origin and age discrimination claims. The EEOC must provide the notice of the right to sue letter, upon request, and upon the expiration of 180 days since the filing of the charge. 29 CFR § 1601.28(a)(1). Thus, Plaintiff had exhausted her administrative remedies as to these claims.

Defendant asserted throughout its motion for summary judgment (Doc. No. 66) that it attempted to make reasonable accommodations in the same manner it would have for any of its employees; however, that is not the case when one examines Plaintiff's body of work, Plaintiff's resume, and Defendant's own prior actions in accommodating a similar disability. (Exhibit B at 148-50, 161-62, 173, 184, 185); (Exhibit C at 105); (Exhibit D). In fact, Defendant promoted an underqualified individual in three years to a position higher than Plaintiff, where lab bench work would no longer be required. *Id*. Sarviaya Sarviaya, the

underqualified individual, had no prior experience when she was hired in the same role as Plaintiff, while Plaintiff possessed over a decade and a half of experience on the date of her hiring. *Id*. Ms. Sarviaya received this promotion after only three years with Defendant; Plaintiff had been with Defendant five (5) years during the dates relevant to this claim. *Id*. Plaintiff even received praise from her superiors and colleagues for her dedication and work product, in particular on the complex Vasopressin Project. (*Id*.; *See also* Exhibit D and Exhibit E).[6]

Unfortunately for Plaintiff, working for a company such as Defendant, and being of Chinese origin, did not entitle her to the same promotion opportunities as Ms. Sarviaya, and others, who are of Indian descent. (Exhibit B at 148, 149-50).[7] Had the same opportunities been equally available to Plaintiff, she would no longer be involved with bench work, as Ms. Sarviaya has not performed bench work since her promotion. (Exhibit B at 149).

## V.     SUMMARY OF THE ARGUMENT

This case arises out of employment discrimination and retaliation against Plaintiff Lanlan Li by her former employer, FK.

---

[6] Plaintiff received a merit bonus for her work, evidencing that she was at the bare minimum competent if not excelling in her current position.

[7] At least 75 people in Plaintiff's department are of Indian descent and receive preferential treatment in terms of "credit, job load, timeline, and the promotion." (Exhibit B at 148).

Plaintiff filed an IDHR charge including national origin discrimination and age discrimination, among other bases, which was sent to the EEOC to review. (*See* Exhibit Q: IDHR Charge; *see* Exhibit R: Letter from IDHR; *see* Exhibit S: Email from EEOC Requesting Issuance of Right to Sue Letter). The subject line of the email from the EEOC indicates that it incorporates the IDHR charge which corresponds to the national origin and age discrimination claims. Between the two separate EEOC charges and the IDHR Charge, all claims were sent in for the appropriate investigatory period.[8]. Defendant moved to dismiss Plaintiff's complaint, which was granted by the lower court. For the reasons below, Plaintiff requests this Court overturn the District Court's decision and allow Plaintiff to have her case decided on its merits.

## VI.     ARGUMENT

### A.     Standard of Review

The nonmoving party, under Fed. R. Civ. P. 56(c), must set-forth specific facts showing there is a genuine dispute for trial. Such a dispute exists when evidence is presented that a reasonable jury could return a favorable verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is appropriate "if the pleadings, depositions, answers to

---

[8] IDHR charge#: 2020CA1223 included national origin, age, disability and retaliation; EEOC charge #: 440-2020-01046: failure to accommodate; EEOC charge # 440-2021-00176: included the charge for retaliation.

interrogatories, and admissions on file, along with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there exists a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party. *Anderson,* 477 U.S. at 255.

1.    **Plaintiff Can Establish Disability Discrimination under the ADA and/or IHRA.**

The ADA prohibits discrimination against a "qualified individual with a disability." A plaintiff bringing suit under the ADA must suffer from a "disability," as defined in the Act, to invoke the Act's protection. Assuming that Plaintiff was disabled under the terms of the Act, to be "qualified," she must also be able to perform all essential functions of her job, either with or without a reasonable accommodation for any disability. 42 U.S.C. § 12112(a); 29 C.F.R. § 1630.4; 29 C.F.R. app. §1630.9. Reasonable accommodations may include, but are not limited to:

- Making existing facilities used by employees readily accessible to and usable by persons with disabilities.

- Job restructuring, modifying work schedules, reassignment to a vacant position; and

- Acquiring or modifying equipment or devices, adjusting or modifying examinations, training materials, or policies, and providing qualified readers or interpreters.[9]

The purpose of said accommodations, and the ADA more generally, is to allow people with disabilities to enjoy equal employment opportunities with each accommodation dependent on the needs of the individual employee. *Id.* Further the EEOC stated:

> Once a reasonable accommodation is requested, the employer and the **individual should discuss the individual's needs and** identify the appropriate reasonable accommodation. Where more than one accommodation would work, the employer may choose the one that is less costly or that is easier to provide.

*Id.*

a. <u>Plaintiff Can Show that She was Discriminated Against Due to her Disability.</u>

When viewed in a light most favorable to Plaintiff, Plaintiff has demonstrated sufficient proof for a trier of fact to find that she was discriminated against due to her disability. Defendant asserts, in contrast to its own exhibits, that Plaintiff was not recommended for a promotion to Principal Scientist due to "her poor performance on the Vasopressin Project." However, Exhibit D states her work on the Vasopressin Project "would help greatly" in her prospects to secure a

---

[9] *Fact Sheet: Disability Discrimination*; Issued January 15, 1997; Published by the U.S. Equal Employment Opportunity Commission, https://www.eeoc.gov/laws/guidance/fact-sheet-disability-discrimination (hereinafter referenced as "EEOC Fact Sheet") (last accessed February 8, 2024).

promotion to Principal Scientist. .[10] Defendant also pointed out that Plaintiff earned a merit-based increased and a bonus outside of the normal cycle for her work on the very same project. The "deficiencies" in Plaintiff's work were actually normal in the scientific field, and not an outlier worthy of negatively impacting Plaintiff's work record.

Further, Defendant's employees had become frustrated due to the need for "modifications" to Ms. Li's report, despite an admission that such "modifications" are the norm in the field. (Exhibit C at 18-20). Defendant's frustrations with a normal occurrence occurred barely a month prior to Plaintiff's first request for an accommodation. (Exhibit C at 20-22). Simply put, Defendant states simultaneously that Plaintiff's work was worthy of a bonus, raise, and recognition for promotion as well as being deficient and cause for termination. This clearly cannot be the case, as Defendant's own documents show Plaintiff was being commended for her work rather than reprimanded. It was due in part to her disability that she received the discriminatory treatment and eventual termination.

Defendant next points to the laboratory bench work as an essential job function that could no longer be completed by Plaintiff due to her disability. However, Defendant had allowed other individuals to work from home and even

---

[10] "In appreciation of all your hard work an extra efforts, you have been awarded an out of cycle bonus!" (Exhibit D)

allowed Plaintiff to undertake tasks other than bench work. Plaintiff never received communications from Mr. Weber asking for ways to accommodate Plaintiff's injury, nor did Plaintiff receive inquiries into the severity of her pain. Not a single person in Defendant's employ engaged with Plaintiff in an interactive process to find out what accommodations could be made. Plaintiff received a reduced opportunity to be accommodated, as clearly shown by what others were offered, and her accommodations were not regarded by Defendant at all.

Plaintiff had more knowledge and expertise than prior employees who had been promoted to positions above her. Purvaba Sarviaya, one such underqualified individual, had no prior experience when she was hired in the same role as Plaintiff, while Plaintiff possessed over a decade and a half of experience on the date of her hiring. Ms. Sarviaya received this promotion after only three (3) years with the Defendant, while Plaintiff had been with Defendant five (5) years during the dates relevant to this claim.  Ms. Sarviaya's role did not include bench work and would have been far more accommodating to Plaintiff's back pain, as it was to Ms. Sarviaya's back pain. (Exhibit B at 149). This work was clearly less physically demanding, since it accommodated Ms. Sarviaya's back pain, and similar opportunities or tasks could have been extended to Plaintiff.

Defendant's own representative admitted Plaintiff would be eligible for rehire, stating that "[i]f she were to present herself as in a particular way that we

could accommodate her working or if she were to return to work full scale we would entertain returning her to work." (Exhibit N at 101-02). However, it is not solely on Plaintiff to provide ways to accommodate her, as the process is required to be interactive between employee and employer. Furthermore, this quote negates any argument by Defendant that Plaintiff's work/work-product was a ground for her termination.

b. Plaintiff Can Show that Defendant Failed to Accommodate Her Disability.

As stated above, Plaintiff never received communications from Mr. Weber asking for ways to accommodate Plaintiff's injury, nor did she receive inquiries into the severity of her pain. Not a single person in Defendant's employ engaged with Plaintiff in an interactive process to find out what accommodations could be made.

In fact, Defendant promoted an underqualified individual, who also suffered from back pain, in three years to a position higher than Plaintiff where lab bench work would no longer be required. Unfortunately for Plaintiff, the same opportunities and accommodations were not available to her that were offered to Ms. Sarviaya, thus showing that it did know how to accommodate employees when it so chose. Had the same opportunities been equally available to Plaintiff, she

19

would not have even had to engage in bench work, as Ms. Sarviaya has not performed bench work since her promotion. (Exhibit B at 149).

1. **Plaintiff Can Show National Origin Discrimination under Title VII and/or the IHRA.**

a. <u>Plaintiff Exhausted Her Federal Administrative Remedies.</u>

Plaintiff filed an IDHR charge including national origin discrimination and age discrimination, among other bases, which was sent to the EEOC to review. (*See* Exhibit Q: IDHR Charge; *see* Exhibit R: Letter from IDHR; *see* Exhibit S: Email from EEOC Requesting Issuance of Right to Sue Letter). The subject line of the email from the EEOC indicates that it incorporates the IDHR charge which corresponds to the national origin and age discrimination claims. Between the two separate EEOC charges and the IDHR Charge, all claims were sent in for the appropriate investigatory period.[11] Plaintiff did what was needed on her end to exhaust the administrative remedies available to her. The EEOC must provide the notice of the right to sue letter, upon request, and upon the expiration of 180 days since the filing of the charge. 29 CFR § 1601.28(a)(1). Thus, Plaintiff exhausted her administrative remedies as to these claims.

b. <u>Plaintiff Can Establish a Prima Facie Case of National Origin Discrimination.</u>

---

[11] IDHR charge#: 2020CA1223 included national origin, age, disability and retaliation; EEOC charge #: 440-2020-01046: failure to accommodate; EEOC charge # 440-2021-00176: included the charge for retaliation.

As Plaintiff has noted herein, Defendant promoted an underqualified individual in three years to a position higher than Plaintiff, where lab bench work would no longer be required. Purvaba Sarviaya, an Indian woman, had no prior experience when she was hired in the same role as Plaintiff, while Plaintiff possessed over a decade and a half of experience on the date of her hiring. Unfortunately for Plaintiff, as a woman of Chinese origin – a group whose representation Defendant did not even track – working for a company such as Defendant, did not entitle her to the same promotion opportunities as Ms. Sarviaya and others, who are of Indian descent. (Exhibit A at 148, 149-50).[12]

Plaintiff was treated differently based upon her being a minority within the scientists in her department. (Exhibit B at 148, 149-50). She has not received the same opportunities as her colleagues despite her voluminous qualifications. As noted, Defendant had over 75 employees of Indian descent, and valued them over others of Asian descent who were not Indian. A reasonable jury could determine, based on the promotion history of Defendant, Plaintiff's testimony, and Defendant's insistence that Plaintiff was fired for poor performance, despite Defendant's representative clearly testifying that her performance was acceptable, that Defendant discriminated Plaintiff based upon her national origin.

---

[12] At least 75 people in Plaintiff's Department are Indian and receive preferential treatment in terms of "credit, job load, timeline, and the promotion." Exhibit B at 148.

2. **Plaintiff Can Establish Retaliation under the ADA, IHRA, and/or Title VII.**

Plaintiff was retaliated against by Defendant. Defendant asserted, in contrast to its own exhibits, that Plaintiff was not recommended for a promotion to Principal Scientist due to "her poor performance on the Vasopressin Project." However, Exhibit D states her work on the Vasopressin Project "would help greatly" in her prospects to secure a promotion to Principal Scientist.[13] Defendant also pointed out that Plaintiff earned a merit based increased and a bonus outside of the normal cycle for her work on the very same project. (Exhibit N at 128-29) The "deficiencies" in Plaintiff's work were normal in the scientific field and not an outlier worthy of negatively impacting Plaintiff's work record.

These complaints only came after Plaintiff requested an accommodation and made complaints. Despite an unblemished record and sterling reviews in the years prior, after she requested an accommodation via a doctor's note on approximately August 6, 2019, Plaintiff was demoted in her work, received dramatically reduced reviews, had her bonus cut, and was given a lower merit increase. (Exhibit B at 155:10-159:22). Plaintiff further testified that she believed she was retaliated

---

[13] "In appreciation of all your hard work an extra effort, you have been awarded an out of cycle bonus!" (Exhibit D)

against because made complaints about national origin discrimination in January 30, 2020 to Defendant, and she was terminated just over two months later (*Id.* at 163:9-164:5).  Moreover, others were able to work from home when the pandemic began and she was not even told about the policy when she had already requested an accommodation, in this same time period of March 2020. (*Id.* at 165:5-166:2). Plaintiff was in the process of trying to obtain short and/or long-term disability when she was fired. (*Id.* at 166:7-168:20).

The most glaring and obvious example of retaliation came when Plaintiff engaged in the protected activity of filing a complaint with the IDHR/EEOC, which were completed at the latest in December of 2019. (Exhibit R). Plaintiff was terminated just months after this charge was filed, and Defendant was aware that she had filed the charge at the time of her termination. Andrew Davis from Defendant's human resources department, who took part in the decision to terminate her, confirmed that Defendant was aware that she was claiming disability discrimination before she was terminated via an email she had sent to Defendant before she was terminated, and that Defendant had discussed her situation with its legal department before terminating her. (Exhibit T, Andrew Davis Deposition at 10:10-12; 103:6-12; 106:24-107:21; 118:4-119:12). Mr. Davis further could not note anything had been done to ensure that she was not discriminated against by

the same person, Kurt Weber, whom she had reported for discrimination for not accommodating her. (*Id.* at 120:16-122:13).

Further, Defendant's employees allege that they had become frustrated due to the need for "modifications" to Ms. Li's report, despite an admission that such "modifications" are the norm in the field. (Exhibit C at 18-20). Defendant's frustrations with a normal occurrence occurred barely a month prior to Plaintiff's first request for an accommodation. (Exhibit C at 20-22). Simply put, Defendant states simultaneously that Plaintiff's work was worthy of a bonus, raise, and recognition for promotion as well as being deficient and cause for termination. Defendant has put forth multiple reasons why Plaintiff was terminated, from poor performance to inability to complete her tasks.

Specifically, the task of laboratory bench work is allegedly an essential job function that could no longer be completed by Plaintiff due to her disability. However, Defendant had allowed other individuals to work from home and even allowed Plaintiff to undertake tasks other than bench work. Plaintiff never received communications from Mr. Weber asking for ways to accommodate Plaintiff's injury, nor did Plaintiff receive inquiries into the severity of her pain. As soon as Plaintiff began her EEOC process, talks of termination began from her supervisor. Defendant retaliatorily terminated Plaintiff, as none of its proffered reasons hold weight when examined by the evidence offered in Defendant's own motion.

1.     **Plaintiff Can Establish Age Discrimination under the ADEA and/or IHRA.**

The ADEA protects individuals who are 40 or older from discrimination. *See Formella v. Brennan*, 817 F.3d 503, 514 (7th Cir. 2016) (citing the ADEA). The ADEA provides, in relevant part, that it shall be unlawful for any employer "to discriminate against any individual…because of such individual's age." *Van Antwerp v. City of Peoria, Ill.*, 627 F. 3d 295, 297 (7th Cir. 2010) (quoting 29 U.S.C. §623(a)(1)).

Plaintiff filed an IDHR charge including national origin discrimination and age discrimination, among other bases, which was sent to the EEOC to review. (*See* Exhibit Q: IDHR Charge; *see* Exhibit R: Letter from IDHR; *see* Exhibit S: Email from EEOC Requesting Issuance of Right to Sue Letter). The subject line of the email from the EEOC indicates that it incorporates the IDHR charge which corresponds to the national origin and age discrimination claims. Between the two separate EEOC charges and the IDHR Charge, all claims were sent in for the appropriate investigatory period.[14] Plaintiff did what was needed on her end to exhaust the administrative remedies available to her. The EEOC must provide the notice of the right to sue letter, upon request, and upon the expiration of 180 days

---

[14] IDHR charge#: 2020CA1223 included national origin, age, disability and retaliation; EEOC charge #: 440-2020-01046: failure to accommodate; EEOC charge # 440-2021-00176: included the charge for retaliation.

since the filing of the charge. 29 CFR § 1601.28(a)(1). Thus, Plaintiff had exhausted her administrative remedies as to these claims.

Assuming the claims are not time barred, Plaintiff can establish a prima facie case of age discrimination. The primary question for the viability of such a claim is whether when considering the evidence "as a whole," such evidence "would permit a reasonable factfinder to conclude that the plaintiff's" age "caused the…discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3ed 760, 763-66 (7th Cir. 2016); s*ee also Carson v. Lake Cty., Indiana*, 865 F.3d 526, 532 (7th Cir. 2017). This forms a standard centered around whether a reasonable juror could conclude that the plaintiff would have kept their job if they were outside the protected class and everything else remained the same. *Ortiz*, 834 F. 3d at 764-765.

Plaintiff is over the age of 40. The person promoted over her, Ms. Purvaba, is under the age of 40. (Exhibit B at 162:11-18). Defendant has not shown that it treated any other older employees as it did her, nor did it even provide the ages of any other employees or attempt to explain why it would be entitled to summary judgment on the age claim, beyond that it alleges she did not exhaust the same.

Defendant asserts that Plaintiff cannot establish a prima facie case for age discrimination, in contrast to its own exhibits, due to her "report she prepared on the Vasopressin Project [which] was substandard, she deviated from standard

26

testing practices, and the report could not be submitted to the FDA as expected."[15] However, Defendant's Exhibit G states her work on the Vasopressin Project "would help greatly" in her prospects to secure a promotion to Principal Scientist.[16] Defendant also pointed out that Plaintiff earned a merit based increased and a bonus outside of the normal cycle for her work on the very same project. (Exhibit N at 128-29)

Defendant's employees, by their own admission, had become frustrated due to the need for "modifications" to Ms. Li's report, despite a further admission that such "modifications" are the norm in the field. (Exhibit C at 18-20). The "deficiencies" in Plaintiff's work were normal in the scientific field and not an outlier worthy of negatively impacting Plaintiff's work record. Defendant states simultaneously that Plaintiff's work was worthy of a bonus, raise, and recognition for promotion as well as being deficient and the cause for termination. Both positions cannot be reconciled.

With no other offered reason for her termination in this section of its argument, logic would dictate the consistent position must be the correct one. Defendant cannot agree in its own Memorandum, Statement of Material Facts, and Exhibits whether Plaintiff's work was worthy of praise or the cause for her

---

[15] Defendant's Memorandum in Support at 18-19.
[16] "In appreciation of all your hard work an extra efforts, you have been awarded an out of cycle bonus!" (Exhibit D)

termination. This "flip-flopping" perspective certainly creates, at the bare minimum, doubt as to Defendant's assertions that Plaintiff's work product was somehow deficient. A reasonable juror could easily find such statements utterly destructive to Defendant's position, thereby creating a *prima facie* case under the framework laid out in *Ortiz*.

## VII.    CONCLUSION

For the reasons stated herein, Plaintiff-Appellant request this Court overturn the District Court's decision to dismiss and Order Plaintiff's claims to be decided on the merits.

Dated: March 6, 2024                                Respectfully submitted,


/s/  *Carla D. Aikens*
CARLA D. AIKENS, P.L.C.
Carla D. Aikens (6296269)
*Attorneys for Plaintiff*
615 Griswold Street, Suite 709
Detroit, Michigan 48226
Tel: (844) 835-2993
Fax: (877) 454-1680


## VIII.   CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) and Seventh Circuit Rule 32(c) because it contains 5,218 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

Dated: March 6, 2024                          Respectfully submitted,


                                              /s/ *Carla D. Aikens*
                                              CARLA D. AIKENS, P.L.C.
                                              Carla D. Aikens (6296269)
                                              *Attorneys for Plaintiff*
                                              615 Griswold Street, Suite 709
                                              Detroit, Michigan 48226
                                              Tel: (844) 835-2993
                                              Fax: (877) 454-1680


## CERTIFICATE OF SERVICE

The undersigned, counsel for the Plaintiff-Appellant, Lanlan Li, hereby

certifies that on March 5, 2024 the foregoing brief was filed with the Clerk of

the Court by using the CM/ECF system. Participants in the case are registered

CM/ECF users, and service will be accomplished by the CM/ECF system.

Dated: March 6, 2024                          Respectfully submitted,


                                              /s/ *Carla D. Aikens*
                                              CARLA D. AIKENS, P.L.C.
                                              Carla D. Aikens (6296269)
                                              *Attorneys for Plaintiff*
                                              615 Griswold Street, Suite 709
                                              Detroit, Michigan 48226
                                              Tel: (844) 835-2993
                                              Fax: (877) 454-1680

Case No. 23-3286

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

LANLAN LI,

PLAINTIFF-APPELLANT,

v.

FRESENIUS KABI, USA, LLC.

DEFENDANT-APPELLEE.

_____

**Appeal From the United States District Court
For The Northern District Of Illinois
Eastern Division**

**SHORT APPENDIX OF
PLAINTIFF-APPELLANT, LANLAN LI**

CARLA D. AIKENS P.L.C.
Carla D. Aikens (6296269)
Attorneys for Plaintiff-Appellant
615 Griswold Street, Suite 709
Detroit, MI 48226
Tel: (844) 835-2993
Fax: (877) 454-1680
carla@aikenslawfirm.com

i

## STATEMENT REGARDING SHORT APPENDIX

Pursuant to Circuit Rule 30(d), I certify that all the materials required by Circuit Rules 30(a) are attached to this brief and 30(b) are attached in the separate short appendix.


Dated: March 6, 2024                    Respectfully submitted,


                                        /s/ *Carla D. Aikens*
                                        CARLA D. AIKENS, P.L.C.
                                        Carla D. Aikens (6296269)
                                        *Attorneys for Plaintiff*
                                        615 Griswold Street, Suite 709
                                        Detroit, Michigan 48226
                                        Tel: (844) 835-2993
                                        Fax: (877) 454-1680

**Case No. 23-3286**

**UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

LANLAN LI,

PLAINTIFF-APPELLANT,

   v.

FRESENIUS KABI, USA, LLC.

DEFENDANT-APPELLEE.

---

**Appeal From the United States District Court
For The Northern District Of Illinois
Eastern Division**

**SHORT APPENDIX OF
PLAINTIFF-APPELLANT, LANLAN LI**

CARLA D. AIKENS P.L.C.
Carla D. Aikens (6296269)
Attorneys for Plaintiff-Appellant
615 Griswold Street, Suite 709
Detroit, MI 48226
Tel: (844) 835-2993
Fax: (877) 454-1680
carla@aikenslawfirm.com

## SHORT APPENDIX: TABLE OF CONTENTS

- Exhibit A: Plaintiff's Amended Complaint; ECF No. 3 PageID. 25-46

- Exhibit B: Plaintiff's Deposition Transcript ECF No. 76-1 PageID. 570-798

- Exhibit C: Deposition Transcript of Jagdish Lande Doc. No. 66 PageID. 419-449

- Exhibit D Defendant's Responses to Production at DEF 01145, ECF No. 66 PageID.474

- Exhibit E: Defendant's Responses to Production at DEF 1129-1130, ECF No. 66 PageID.476

- Exhibit F: Defendant's Response to Production at DEF 03355, ECF No. 66 PageID.479

- Exhibit G: Defendant's Responses to Production at DEF 03143 and DEF 0056, ECF No. 66 PageID.482

- Exhibit H Defendant's Responses to Production at DEF 03142-DEF 03143, ECF No. 66 PageID.486-487

- Exhibit I: Defendant's Responses to Production at DEF 0190, ECF No. 66 PageID. 489

- Exhibit J: Defendant's Responses to Production at DEF 03170, 03407-03414 ECF No. 66 PageID.491, 493-500

- Exhibit K, Defendant's Responses to Production, DEF 03168, ECF No. 66 PageID. 502

- Exhibit L: Defendant's Responses to Production at DEF 03176, ECF No. 66 PageID. 504

- Exhibit M: Defendant's Responses to Production at DEF 0217-0219, ECF No. 66 PageID. 511

- Exhibit N: Deposition Transcript of Deborah Browne, Doc. No. 66 PageID 335-417

- Exhibit O: Defendant's Responses to Production, DEF 03357-03360 and DEF 03366, ECF No. 66 PageID. 519-522

- Exhibit P: Defendant's Responses to Production at DEF 03354, ECF No. 66 PageID. 526

- Exhibit Q: IDHR Charge Doc. No. 76-2 PageID. 800-808

- Exhibit R: Letter from IDHR Doc. No. 76-3 PageID. 810

- Exhibit S: Email from EEOC Requesting Issuance of Right to Sue Letter Doc. No. 76-4 PageID. 812-815

- Exhibit T: Deposition Transcript of Andrew Davis (A 1 - A 59) (attached to separate appendix as Circuit Rule 30(b) material)

- Exhibit U: Opinion and Memorandum Granting Summary Judgment, Doc. No. 88 PageID 853-865 (attached to this brief as Circuit Rule 30(a) material)

- Exhibit V: Order Denying Motion for Reconsideration, Doc. No. 91 PageID 903-906 (attached to this brief as Circuit Rule 30(a) material)

Dated: March 6, 2024                    Respectfully submitted,


                                        /s/ *Carla D. Aikens*
                                        CARLA D. AIKENS, P.L.C.
                                        Carla D. Aikens (6296269)
                                        *Attorneys for Plaintiff*
                                        615 Griswold Street, Suite 709
                                        Detroit, Michigan 48226
                                        Tel: (844) 835-2993
                                        Fax: (877) 454-1680

# EXHIBIT V

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| LANLAN LI, | |
| Plaintiff, | |
| v. | Case No. 20-cv-07110 |
| FRESENIUS KABI USA, LLC, | Judge Mary M. Rowland |
| Defendants. | |

### <u>ORDER</u>

In this case Plaintiff Lanlan Li claimed that her former employer, Fresenius, fired her because of her disability, national origin, and age and in retaliation for complaining about Fresenius's failure to accommodate her. This Court previously granted Defendant's motion for summary judgment on all of Li's claims. Li has filed a motion to reconsider (Dkt. 90) this Court's May 15, 2023 opinion (Dkt. 88, "Summary Judgment Opinion"). For reasons stated herein, Li's reconsideration motion [90] is denied.

### I.    Background

In its Summary Judgment Opinion, the Court agreed with Fresenius that Plaintiff failed to exhaust her administrative remedies for her national origin and age discrimination claims. And as for her disability discrimination claims, Plaintiff did not raise a genuine issue of material fact precluding summary judgment in favor of Fresenius. The Court dismissed without prejudice Plaintiff's claims based on age and national origin (Counts III, IV, IX, X). The Court dismissed with prejudice her remaining claims (Counts I, II, V, VI, VII, VIII, XI, and XII).

In her reconsideration motion, Plaintiff asks the Court to vacate its Summary Judgment Opinion, however Plaintiff only makes arguments about her disability, national origin, and retaliation claims.

### II.    Standard

It is well-established that motions for reconsideration "serve a limited function." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (citation and quotation omitted). The party moving for reconsideration must establish a manifest error of law or fact or present newly discovered evidence. *Vesely*

1

A566

*v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014); *Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 911–12 (N.D. Ill. 2015). The moving party thus "bears a heavy burden." *Finnsugar Bioproducts, Inc. v. Amalgamated Sugar Co., LLC*, 244 F. Supp. 2d 890, 891 (N.D. Ill. 2002). "A manifest error is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal citations and quotations omitted); *see also Caisse Nationale*, 90 F.3d at 1270 (the moving party may not use a motion to reconsider to "rehash[] previously rejected arguments or argu[e] matters that could have been heard during the pendency of the previous motion").

### III.    Analysis

In her motion, Plaintiff argues that her disability and retaliation claims should be allowed to proceed. She also asserts that an EEOC right to sue notice shows that Plaintiff's national origin claims should be reinstated.

### A. National Origin Claims

The Court begins with Plaintiff's argument about her national origin claims. Plaintiff's counsel says he "first received a copy of this notice of right to sue from the EEOC on June 12, 2023, after requesting a copy of the document." [90 at 10]. "With this document showing exhaustion," he argues that this Court should reinstate the national origin claims. *Id.* In the original summary judgment briefing, Plaintiff argued only that she "did what was needed on her end to exhaust," and attached an email from one EEOC employee to another. [76]. No right to sue notice was attached (nor was any right to sue notice in the record before the Court at all). Plaintiff does not explain why she could not obtain a copy of this document earlier in the lawsuit, which she filed in 2020, or at least by the time of summary judgment briefing.

As this Court explained before, it was not the Court's job to scour the record to find relevant documents, or to presume, without documentation from Plaintiff, that she had exhausted her administrative remedies. These "matters that could have been heard during the pendency of the previous motion", are inappropriate for a motion to reconsider. *Caisse Nationale*, 90 F.3d at 1270. Plaintiff fails to cite any authority that the Court should reconsider under these circumstances. Indeed a motion to reconsider "performs a valuable function where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (cleaned up). That is not what happened here.

Therefore the Court denies Plaintiff's request to reconsider its order regarding her national origin claims.

2

## B. Disability and Retaliation Claims

Plaintiff also asks the Court to reconsider its ruling about her disability and retaliation claims.

For her disability claim, Plaintiff argues there was a material question of fact about whether lab work was part of being a Senior Scientist. With regard to Defendant's Statement of Material Fact #30, Plaintiff argues that Defendant had the burden of proof and the Court should have accepted her denial of this fact and assertion that her "understanding does not correlate lab work and bench work meaning the exact same thing." [90 at 7]. In addition to the fact that Plaintiff does not address the other reasons for this Court's finding that her disability claim did not survive summary judgment, as explained before, Plaintiff did not cite any Local Rule 56.1-compliant evidence to dispute Defendant's asserted fact. *See Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 925 (7th Cir. 2019)

For her Title VII retaliation claim, Plaintiff had to show that: "(1) she engaged in statutorily protected expression; (2) she suffered an adverse action by her employer; and (3) there is a causal link between her protected expression and the adverse action." *Scaife v. U.S. Dep't of Veterans Affs.*, 49 F.4th 1109 , 1118 (7th Cir. 2022). She had to show retaliatory intent played a role in the adverse action. *See Huff v. Buttigieg*, 42 F.4th 638 , 645 (7th Cir. 2022). This Court found that Plaintiff failed to provide evidence of causation to survive summary judgment on her retaliation claim. Plaintiff now broadly argues that "[t]he causal chain of events in this case would [] allow for a causal link to occur from any of the broader range of adverse actions that occurred between November of 2019 and May of 2020." [90 at 9]. This does not demonstrate error in this Court's opinion. Plaintiff also did not address this Court's finding that she failed to fully comply with Local Rule 56.1.

In sum, Plaintiff's motion disagrees with this Court's original decision but does not demonstrate this Court erred in its decision. Considering Plaintiff's "heavy burden," *Patrick*, 103 F. Supp. 3d at 912, and the fact that the decision whether to grant a motion to reconsider is in the Court's discretion, *Darvosh v. Lewis*, 2015 WL 5445411, at *3 (N.D. Ill. Sept. 11, 2015), reconsideration is not warranted here.

## IV.   Conclusion

For the stated reasons, Plaintiff's Motion to Reconsider [90] is denied.

3

E N T E R:

Dated: October 25, 2023

_____
MARY M. ROWLAND
United States District Judge

4

EXHIBIT U

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

LANLAN LI,

Plaintiff,

v.

FRESENIUS KABI USA, LLC,

Defendant.

Case No. 20-cv-07110

Judge Mary M. Rowland

<u>**MEMORANDUM OPINION AND ORDER**</u>

Defendant Fresenius Kabi USA, LLC, a pharmaceutical company, terminated Plaintiff Lanlan Li in May 2020. Li had worked for Fresenius as a Senior Scientist since 2014. Li claims that Fresenius fired her because of her disability, national origin, and age and in retaliation for complaining about Fresenius's failure to accommodate her. Li brings a twelve-count complaint for discrimination and retaliation. Defendant moves for summary judgment on all of Li's claims. [64]. For the reasons explained below, this Court grants Defendant's motion.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are

material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

## BACKGROUND[1]

The Court initially addresses Fresenius's argument that Li failed to comply with Local Rule 56.1 (Dkt. 80). The Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 414 (7th Cir. 2019) (quotation

---

[1] The Court takes these background facts from Defendant's statement of facts (DSOF) [66] and Li's response to Defendant's statement of facts [78]. Li did not submit a separate statement of additional facts.

omitted). A district court can strictly enforce this local rule "by accepting the movant's version of facts as undisputed if the non-movant has failed to respond in the form required." *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 648 (7th Cir. 2014). The Court agrees that Li failed to fully comply with the Local Rule 56.1 and will address particular local rule violations in its analysis below. With this, the Court turns to the undisputed facts.

## I.    Plaintiff's Employment

In November 2014, Li began working for Fresenius as a Senior Scientist in the Department of Analytical Development. DSOF ¶ 9. Li is over 40 years of age and of Chinese descent. *Id*. ¶ 11. In 2016, Li was asked to perform a cell-based assay involving vasopressin. *Id*. ¶ 14. Fresenius intended to submit the final report to the U.S. Food and Drug Administration (FDA) for approval and therefore required Li to adhere to certain standards and protocols on testing and reporting. *Id*. ¶ 15. The deadline for submission of Li's report on the "Vasopressin Project" to Fresenius Regulatory Affairs was June 24, 2019. *Id*. ¶ 16. Li submitted her Vasopressin Project report on May 29, 2019. *Id*. ¶ 18. Li was on vacation from June 3, 2019 to June 23, 2019. *Id*. ¶ 19.[2]

On June 8, 2019, because of her hard work, Manager Kurt Weber awarded Li a monetary bonus. *Id*. ¶ 20. However Li's report was not able to be submitted to the

---

[2] Li says the start date of her vacation was May 30, 2019 [78 at 6] although the Court finds this date difference immaterial to the issues in the case.

FDA in the form that Li submitted to her supervisors. *Id.* ¶ 21.[3] Subsequently, Mr. Weber did not recommend Li for promotion to Department Supervisor, Jagdish Lande. *Id.* ¶ 22.[4]

On July 24, 2019, Li reported to Jinsong Liu that she was having back pain and eye strain and that she believed it to be from working long hours in the lab. *Id.* ¶ 23. Mr. Liu reported this to Mr. Lande and on July 24, 2019, Mr. Lande and Mr. Weber met with Li to discuss her health concerns. *Id.* ¶ 24. On August 1, 2019, Li sent Human Resources Manager Birgit Patrick a copy of her work restrictions from a doctor's visit on July 31, 2019; these restrictions included no lifting over 5 pounds and to avoid sitting 7-8 hours. *Id.* ¶ 26.

On August 13, 2019, Ms. Patrick contacted Benefits Analyst Kristina Fuller to assist Li in filing for leave under the Family and Medical Leave Act and Short-Term Disability benefits. *Id.* ¶ 32. Li did not provide medical documentation to UNUM and her short-term disability claim was denied in November 2019. *Id.* ¶ 34. Li then provided UNUM with the required documentation and on December 19, 2019, was approved for Short-Term Disability benefits beginning September 26, 2019. *Id.* ¶ 35. On March 11, 2020, UNUM sent Li and Fresenius a letter about transitioning Li to Long Term Disability Benefits. *Id.* ¶ 38. On March 23, 2020, Fresenius informed Li

---

[3] Li disputes DSOF ¶ 21 but does not dispute this portion of the statement that her report was not submitted to the FDA in the form she submitted it to her employer.

[4] Li's response to defendant's statements admitting the statement along with a qualification such as "the email speaks for itself" or followed by argument without any explanation of whether Li disputes in part the statement (Dkt. 78 at 6-7) are non-responsive under Local Rule 56.1. *See e.g. Arias v. CITGO Petroleum Corp.*, No. 17-CV-08897, 2019 WL 4735391, at *2 (N.D. Ill. Sept. 27, 2019).

that she had exhausted her Short-Term Disability Leave and that should she be unable to return to work by April 23, 2020, she would be terminated from payroll. *Id*. ¶ 39.

On April 21, 2020, Andrew Davis, Senior Human Resources Manager, sent an email to Li explaining that should she still be unable to perform her job duties, she would either need to transition to Long Term Disability or be terminated from payroll. *Id*. ¶ 41. Further, Fresenius would extend her time to return to work to April 30, 2020 given her follow-up doctor's appointment to determine if she was able to return to work. *Id*. By April 23, 2020, Li's Long Term Disability Benefits had not yet been approved by UNUM. *Id*. ¶ 42. On April 30, 2020, UNUM notified Li and Fresenius that Li's Long Term Disability benefits had been denied. *Id*. ¶ 42.

## II.    Plaintiff's Termination

After Li's Long Term Disability benefits were denied, Fresenius granted Li another extension until May 21, 2020 to return to work, either with or without restrictions. DSOF ¶¶ 43–44. By May 26, 2020, Li remained unable to return to work and Fresenius terminated her employment. *Id*. ¶ 45.

Li alleges that Fresenius discriminated against her due to her disability, race/national origin, and age, and she also alleges failure to accommodate her disability and retaliation under both state and federal law. *Id*. ¶ 8.

## III.    The IDHR and EEOC

On or about November 20, 2019, Li filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) alleging discrimination based

5

on her disability and retaliation. DSOF ¶ 36.[5] According to Li, she "filed claims with the IDHR [Illinois Department of Human Rights], which she sent to the EEOC to review." [76 at 9]. Li identifies the following charge numbers for her three charges: EEOC charge number 440-2020-01046, IDHR number 2020CA1223, and EEOC number 440-2021-00176. *Id*. Fresenius does not dispute that Li filed these charges, but argues that Li did not exhaust her administrative remedies for her national origin and age claims.

## ANALYSIS

In Li's amended complaint, she brings claims for disability discrimination under the ADA (Count I) and under the IHRA (Count II), national origin discrimination under Title VII and IHRA (Counts III and IV), retaliation in violation of the ADA (Count V), retaliation in violation of the IHRA (Count VI), failure to accommodate under the ADA and IHRA (Counts VII and VIII), age discrimination under the ADEA and IHRA (Counts IX and X), and retaliation in violation of Title VII and the IHRA (Count XI and XII). [3]. Fresenius moves for summary judgment on all the claims.

The Court agrees with Fresenius that Li failed to exhaust her administrative remedies for her national origin and age discrimination claims. As for Li's disability discrimination claims, assuming they are properly before this Court, Li does not raise a genuine issue of material fact precluding summary judgment in favor of Fresenius.

---

[5] The Charge Fresenius references in this asserted fact and attaches as Exhibit R is signed October 9, 2020 and says it was received by the EEOC on that date. This 2020 Charge refers to the earlier EEOC charge, number 440-2020-01046, that Li filed in 2019.

## I.    Failure to Exhaust

Fresenius argues that Li's claims of national origin and age discrimination are time-barred because she failed to exhaust her administrative remedies for those claims. [65 at 12, 17]. Li does not dispute that her EEOC charges did not contain claims of national origin or age discrimination. [76]. Still, Li argues, she "filed claims with the IDHR," based on national origin and age, "which she sent to the EEOC to review." *Id.* at 9. She maintains that "[a] right to sue letter was requested, and the [EEOC] combined the charges," and thus "all claims were sent in for the appropriate investigatory period." *Id.*

The summary judgment record shows that the 2019 EEOC charge (-01046) was filed first, then the 2019 IDHR Charge (-1223) and finally the second EEOC charge in 2020 (-00176). (Dkt. 66, Exh. R; Dkt. 76-3). However, there is no right-to-sue letter from the EEOC nor any final report from the IDHR in this record.[6]

The purpose of the EEOC's exhaustion requirement is to ensure an employer receives "prompt notice" of the claim (see *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121 (2002)), and to provide the EEOC an opportunity to investigate complaints and help the parties settle the dispute. *Moore v. Vital Prod., Inc.*, 641 F.3d 253, 257 (7th Cir. 2011) (citations omitted). Similarly the IHRA and Illinois Human Rights Commission's rules "establish comprehensive administrative procedures

---

[6] Although it is not the Court's job to "scour the record" on summary judgment (*see Castelino v. Rose-Hulman Inst. of Tech.*, 999 F.3d 1031, 1040 (7th Cir. 2021)), the Court also reviewed prior pleadings in the case and has not located any right-to-sue letter from either the IDHR or EEOC, despite Li's reference to the right-to-sue letter in both her original and amended complaints.

7

governing the disposition of alleged civil rights actions." *Anderson v. Centers for New Horizons, Inc.*, 891 F. Supp. 2d 956, 961 (N.D. Ill. 2012) (cleaned up); *see also Burton v. Chicago Transit Auth.*, No. 17 C 8508, 2019 WL 1932585, at *2 (N.D. Ill. May 1, 2019) ("Plaintiffs alleging discrimination under [these] statutes must first present their claims in a charge to the EEOC or IDHR before taking them to court.").

Li does not dispute that administrative exhaustion is required in this case but maintains that she "did what was needed on her end to exhaust." (Dkt. 76 at 9). The document Li attaches, an email from one EEOC employee to another about "processing a request for a Notice of Right to Sue" (Dkt. 76-4) does not constitute a right-to-sue. And in April 2021, Li's attorney expressly asked the EEOC to "advise *if* a right was issued *as we did not receive it.*" *Id.* (emphasis added).

In addition, Li does not cite any authority to support the proposition that sending an IDHR charge to the "EEOC to review" and "request[ing]" a right to sue letter constitutes exhaustion before either the IDHR or EEOC. *See e.g. Vroman v. Round Lake Area Sch.-Dist.*, No. 15 C 2013, 2015 WL 7273108, at *2 (N.D. Ill. Nov. 18, 2015) (rejecting argument that when plaintiff "transferred" her IDHR charges to the EEOC that constituted exhaustion); *Baranowska v. Intertek Testing Servs. NA, Inc.*, No. 19 C 6844, 2020 WL 1701860, at *3 (N.D. Ill. Apr. 8, 2020) (EEOC right-to-sue letter is not a substitute for a report from the IDHR); *Smith v. City of Chicago*, No. 18 C 8075, 2021 WL 463235, at *5 (N.D. Ill. Feb. 9, 2021), aff'd sub nom. 2022 WL 205414 (7th Cir. Jan. 24, 2022) (explaining that "[e]ven if [plaintiff] timely *filed* his charge, he did not properly *exhaust* his administrative remedies."). Accordingly Li's national origin

and age claims are dismissed without prejudice. *See McHale v. McDonough*, 41 F.4th 866, 872 (7th Cir. 2022).

As to Li's disability discrimination claims, the record similarly lacks a right-to-sue letter for those claims. *See e.g. Burton,* 2019 WL 1932585 (exhaustion required for ADA claims). However, Fresenius did not argue that her disability claims are time-barred. For completeness, the Court addresses the merits of those claims.

## II.    Disability Claims

The ADA prohibits discrimination against a "qualified individual on the basis of disability." 42 U.S.C. § 12112(a) "[T]o be "qualified" under the ADA, an individual must be able to "perform the essential functions" of her job "with or without reasonable accommodation." *McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 971 (7th Cir. 2020) (quoting 42 U.S.C. § 12111(8)). An employer must make reasonable accommodations that allow a qualified individual to perform the essential functions of her job. *Miller v. Illinois Dep't of Transp.*, 643 F.3d 190, 197 (7th Cir. 2011). Under *Ortiz v. Werner Enterprises, Inc.*, the Court asks "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [membership in a protected class] . . . caused the discharge or other adverse employment action" at issue. 834 F.3d 760, 765 (7th Cir. 2016). *See also Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022) (courts assess the evidence as a whole).

Fresenius does not dispute that Li had a disability. Li was diagnosed with spondylolisthesis, which causes back pain (Dkt. 76-1). Li argues that she was not promoted and later terminated because of her disability. Fresenius contends that she

9

was not promoted due to her work product. And Fresenius asserts that Li was terminated after nine months of Fresenius accommodating her disability and only after she exhausted her time for disability leave, until Li could no longer return and perform the essential functions of her job.

The parties dispute whether performing lab work is an essential function of a Senior Scientist (Li's position). Department Supervisor Mr. Lande testified that it is a requirement for senior scientist to be able to perform bench work as part of their job duties. (DSOF ¶ 30; Dkt. 66, Exh. F). Li's only response to this was that her "understanding does not correlate lab work and bench work meaning the exact same thing." (Dkt. 78 ¶ 30). This is argument, not a factual assertion supported by admissible evidence.

Li also contends that Fresenius "allowed other individuals to work from home and even allowed [her] to undertake tasks other than bench work." (Dkt. 76 at 6). First, the fact that Li received an accommodation does not automatically mean that performing bench work was not an essential function of her position. *See Tate v. Dart*, 51 F.4th 789, 800 (7th Cir. 2022). For the other employees, Li relies on her own deposition testimony stating that they also had back issues and did not do bench work or were allowed to work at home. (Dkt. 76-1, Exh. A). Li does not specify whether her former colleagues received accomodations, nor does she explain why this demonstrates that bench work is not an essential function of a Senior Scientist. In addition, in response to Fresenius's explanation that she was not promoted because of the results of her report on the Vasopressin Project, Li contends that she was being

considered for a promotion and that she received a bonus. But this does not defeat summary judgment because these events occurred *before* Fresenius decided not to submit her report to the FDA. DSOF ¶¶ 17, 20. This also occurred prior to Fresenius's knowledge of her disability. On this record, Li has not shown she was a "qualified individual" under the ADA.

Further, as to Li's termination, as Fresenius points out (Dkt. 65 at 10), under Seventh Circuit law, "[i]nability to work for a multi-month period removes a person from the class protected by the ADA." *Byrne v. Avon Prod., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003). Fresenius argues that it could not "continue to hold [Li's] job open indefinitely when she remained unable to perform the essential functions of her job for over nine months." (Dkt. 65 at 16). In *Gross v. Peoples Gas Light & Coke Co.*, for example, the court held that plaintiff's "undisputed inability to work at the time of his termination meant that he did not meet the ADA's definition of a qualified person with a disability." No. 17-CV-3214, 2022 WL 4599369, at *16 (N.D. Ill. Sept. 30, 2022). Li did not respond to this argument, waiving any response. *Cooper v. Retrieval-Masters Creditors Bureau, Inc.,* 42 F.4th 675, 688 (7th Cir. 2022); *see also Castelino*, 999 F.3d at 1040 ("In considering a motion for summary judgment, the court is not obligated to assume the truth of a nonmovant's conclusory allegations on faith or to scour the record to unearth material factual disputes.") (cleaned up).[7]

Li therefore has not raised a genuine issue of material fact to survive summary judgment on her claims of discrimination based on her disability and failure to

---

[7] As for Li's argument about the interactive process, generally a claim for a break-down in the interactive process is not an independent basis for liability. *See McAllister*, 983 F.3d at

11

A562

accommodate. *See Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 925 (7th Cir. 2019) (party opposing a summary judgment motion must inform the court "of the reasons, legal or factual, why summary judgment should not be entered").

## III.    Retaliation Claims

The Court next assesses whether Li raises a triable issue on her retaliation claims. To survive summary judgment on this claim, a plaintiff must present evidence of: (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two. *Abebe v. Health & Hosp. Corp. of Marion Cnty.,* 35 F.4th 601, 607 (7th Cir. 2022). The Court asks: Does the record contain sufficient evidence to permit a reasonable factfinder to conclude that retaliatory motive caused the materially adverse action? *Lesiv v. Ill. Cent. R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022).

For the causation element, Li must show that the defendant would not have taken the adverse action but for plaintiff's protected activity. *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015). The parties agree that Li filed her first EEOC charge in November 2019. Li was terminated in May 2020. Fresenius argues that these events were six months apart, and the record lacks evidence of a causal connection between them. *Tyburski v. City of Chicago*, 964 F.3d 590, 597 (7th Cir. 2020) (moving party may succeed by showing an absence of evidence to support non-

---

972. In certain circumstances such as where an employer unreasonably delays in providing an accommodation for an employee's known disability, this can amount to a failure to accommodate. *See McCray v. Wilkie*, 966 F.3d 616, 621 (7th Cir. 2020). But Li's broad assertion that her employer offered her "only some of the accommodations it offered to other individuals" (Dkt. 78 at 12) is undeveloped and does not support her claim.

moving party's claims). Li says that Fresenius was frustrated with her work one month after her first request for accommodation, and as she "began her EEOC process, talks of termination began from her supervisor." (Dkt. 76 at 12). But these arguments lack specifics and are unsupported by evidence, let alone a Local Rule 56.1-compliant fact. Li does not offer any evidence to establish the requisite causal connection. *See Scaife v. U.S. Dep't of Veterans Affs.*, 49 F.4th 1109, 1118 (7th Cir. 2022); *Rozumalski*, 937 F.3d at 925.

A reasonable factfinder could not return a verdict in Li's favor on her retaliation claim. Fresenius is entitled to judgment as a matter of law on this basis as well.

## CONCLUSION

For the reasons explained, this Court grants Defendant's motion for summary judgment [64] and directs the Clerk to enter judgment in Defendant's favor. Plaintiff's claims based on age and national origin (Counts III, IV, IX, X) are dismissed without prejudice. Her remaining claims (Counts I, II, V, VI, VII, VIII, XI, and XII) are dismissed with prejudice. Civil case terminated.

E N T E R :

Dated: May 15, 2023

_____
MARY M. ROWLAND
United States District Judge

A564